J-S70008-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ALI ELIJAH DAVIS | |
| Appellant | No. 457 EDA 2016 |

Appeal from the PCRA Order February 17, 2014
In the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0002141-2008

BEFORE:  OLSON, OTT and MUSMANNO, JJ.

MEMORANDUM BY OLSON, J.:                **FILED MARCH 01, 2017**

Appellant, Ali Elijah Davis, appeals from the order entered on February 17, 2014, dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  Counsel filed with this Court a petition to withdraw from further representation and a no-merit letter pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). Upon review, we grant counsel's petition to withdraw and affirm the dismissal of Appellant's PCRA petition.

The PCRA court summarized the facts and procedural history of this case as follows:

> [O]n November 27, 2007, [Appellant] along with three co-defendants entered the [victims'] residence [] in the City of Easton, Northampton County, Pennsylvania.  [Appellant] transported his co-defendants to the residence in his

mother's vehicle. [Appellant], along with his three co-defendants entered the residence. Testimony established that three of this group converged upon an upstairs bedroom where they open fired in an "execution style" killing of [] three individuals, one adult male and two adult females. The testimony adduced at trial indicated that shortly before [Appellant] entered the residence, he was handed a handgun of the same caliber that was used in the "execution style" homicides.

Following a jury trial, [Appellant] was convicted on January 25, 2010 of three counts of [f]irst [d]egree [m]urder, 18 [Pa.C.S.A.] § 2502(a) and [c]onspiracy to [c]ommit [m]urder, 18 [Pa.C.S.A.] § 903(a)(1). The jury did not find the necessary support for the imposition of the death penalty. As a result, [the trial court] sentenced [Appellant] on January 27, 2010 to three mandatory life sentences of incarceration without the possibility of parole to run consecutive to each other.

\* \* \*

[Appellant] filed post-sentence motions which were subsequently denied by [the trial court]. Thereafter, [Appellant] filed a direct appeal to [this] Court [] on August 9, 2010. [We affirmed Appellant's] judgment of sentence [] on July 18, 2011. *Commonwealth v. Davis*, 32 A.3d 272 (Pa. Super. 2010) (unpublished memorandum). [Appellant's] petition for allowance of appeal was denied by the Supreme Court of Pennsylvania on May 30, 2012. *Commonwealth v. Davis*, 47 A.3d 844 (Pa. 2012). On July 30, 2012, [Appellant] filed a petition for collateral relief pursuant to the PCRA wherein he raised the ineffectiveness of trial counsel. [The PCRA court] appointed Christopher Brett, Esquire to represent [Appellant] in his PCRA proceedings. A PCRA hearing was held [] on January 15, 2014.[1] On February 17, 2014, [the PCRA court] issued an [o]rder and accompanying [s]tatement of [r]easons dismissing [Appellant's] PCRA petition. A copy of the

_____

[1] The certified record also reveals that there was another evidentiary hearing held on January 22, 2013.

[o]rder dismissing [Appellant's] PCRA petition was "[h]and [d]elivered" to Attorney Brett, counsel of record for [Appellant] on February 18, 2014. No timely appeal was filed by Attorney Brett on behalf of [Appellant] following the dismissal of his PCRA petition.

PCRA Court Opinion, 3/12/2015, at 1-3 (record citations omitted).

Thereafter, Appellant pursued reinstatement of his direct appeal rights with both the PCRA court and this Court. The PCRA court appointed counsel to represent Appellant. Eventually, on January 15, 2016, the PCRA court entered an order reinstating Appellant's right to appeal from the denial of his first PCRA petition on February 17, 2014. This timely appeal resulted.[2]

PCRA counsel determined that there were no meritorious issues for appellate review, counsel notified Appellant of his intent to withdraw from representation and filed, in this Court, both a motion to withdraw as counsel and an accompanying "no merit" brief pursuant to **Turner**/**Finley**. **See Commonwealth v. Doty**, 48 A.3d 451, 454 (Pa. Super. 2012). Appellant

_____

[2] Counsel for Appellant filed a notice of appeal on January 29, 2016. On February 4, 2016, the PCRA court entered an order directing counsel to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Counsel complied timely on February 23, 2016. We further note that Appellant also filed the following *pro se* documents: a notice of appeal, an application for reinstatement of direct appeal rights *nunc pro tunc*, and a Rule 1925(b) concise statement. On February 10, 2016, the PCRA court entered an order that recognized the *pro se* filings, but then correctly declined to take action. We remind Appellant that hybrid representation is not permitted in Pennsylvania and when represented by counsel, *pro se* filings are legal nullities. **See Commonwealth v. Ali**, 10 A.3d 282 (Pa. 2010). The PCRA court issued an opinion pursuant to Pa.R.A.P. 1925(a) on February 29, 2016, relying on its prior decisions issued on February 17, 2014 and March 12, 2015.

filed a *pro se* response to the petition to withdraw as counsel on July 18, 2016.

Prior to reviewing the merits of this appeal, we first decide whether counsel has fulfilled the procedural requirements for withdrawing as counsel. ***Doty****,* 48 A.3d at 454. As we have explained:

> Counsel petitioning to withdraw from PCRA representation must proceed ... under ***Turner****, **supra*** and ***Finley****, **supra*** and must review the case zealously. ***Turner/Finley*** counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.
>
> Counsel must also send to the petitioner: (1) a copy of the "no merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.
>
> \*       \*       \*
>
> Where counsel submits a petition and no-merit letter that ... satisfy the technical demands of ***Turner/Finley***, the court— trial court or this Court—must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

***Id.***

Here, we find all of the above-mentioned procedural requirements have been satisfied. Counsel filed a no-merit brief and petition to withdraw as counsel with this Court. On June 21, 2016, by *per curiam* order of this Court, we directed Appellant's counsel to provide the Prothonotary with

- 4 -

copies of the letter to Appellant informing him of his right to retain counsel or proceed *pro se* in this appeal. While we did not receive a copy of the letter from counsel, Appellant filed a *pro se* response to the no-merit brief and attached a copy of a letter from counsel, dated June 8, 2016, informing Appellant of his right to retain counsel or proceed *pro se*. Hence, because Appellant received a copy of the letter, we conclude that the ***Turner***/***Finley*** requirements were met. We now undertake our own review of the case to consider whether the PCRA court erred in dismissing Appellant's PCRA petition and to determine whether the record supports any other issues of potential merit.

Counsel's ***Turner***/***Finley*** brief reviews the claims presented in Appellant's July 30, 2012 PCRA petition, listing them as follows:

a. [Whether Appellant's] sentence of mandatory life without parole was unconstitutional and violated the [United States] Supreme Court's decision in ***Miller v. Alabama***, 132 S.Ct. 2455 (2012)[?]

b. [Whether a]ppellate counsel was ineffective because he did not properly support [A]ppellant's arguments in his brief[?]

c. [Whether a]t the PCRA hearing on January 22, 2013, PCRA counsel Brett pursued an additional claim of ineffective assistance of counsel [not presented in the PCRA petition] by arguing that trial counsel did not properly review a proposed plea agreement with [Appellant?]

Appellant's Brief at 7.

Our standard of review of a PCRA court's dismissal of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the record evidence and free of legal error. ***Commonwealth v. Whitehawk***, 146 A.3d 266, 269 (Pa. Super. 2016).

In his first issue presented, Appellant avers that his mandatory sentence of life imprisonment is unconstitutional in light of the United States Supreme Court's decision in ***Miller***. "The ***Miller*** decision applies to only those defendants who were 'under the age of 18 at the time of their crimes.'" ***Commonwealth v. Furgess***, 149 A.3d 90, 94 (Pa. Super. 2016), *citing* ***Miller***, 132 S.Ct. at 2460. Throughout his PCRA petition, Appellant concedes that he was 20 years old at the time of the crimes. ***See*** PCRA Petition, 7/30/2012, at 3 (2 attachments thereto). The PCRA court recognized that Appellant "exceeded the age of majority when he committed the crimes." PCRA Court Opinion, 2/17/2014, at 4. The PCRA court also rejected Appellant's alternative argument that the right espoused in ***Miller*** should be extended to young adults, whose biological process is still developing. ***Id.*** We have rejected this precise argument previously. ***See Commonwealth v. Cintora***, 69 A.3d 759, 764 (Pa. Super. 2013) (***Miller***'s holding, that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition against cruel and unusual punishments, does not extend to PCRA petitioners who were 21 and 19 years old, respectively, at time they committed murders for

which they were convicted, and cannot serve as basis for PCRA relief). We agree with the PCRA court that no relief on this issue is due.

Next, Appellant claims appellate counsel was ineffective for failing to develop, or provide sufficient legal support, for several of his arguments on direct appeal. More specifically, Appellant alleged in his PCRA petition that counsel's ineffectiveness caused the waiver of claims on direct appeal to this Court pertaining to the weight and sufficiency of the evidence, suppression of Appellant's pre-arrest statements, the seizure of his cellular telephone, and inflammatory media coverage for lack of legal development. **See** PCRA Petition, 7/30/2012, at 4 (attachments at 5-6).

To be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found in Section 9543(a)(2), which includes the ineffective assistance of counsel. 42 Pa.C.S.A. § 9543(a)(2)(i).

"Our standard of review requires us to determine whether the ruling of the PCRA court is supported by the record and is free of legal error." **Commonwealth v. Hutchinson**, 25 A.3d 277, 284 (Pa. 2011) (internal citation omitted). "The PCRA court's credibility determinations are binding on [an appellate court] when they are supported by the record." **Id.** "However, [we apply] a *de novo* standard of review to the PCRA court's legal conclusions." **Id.**

We have previously determined:

It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. To prevail on an ineffectiveness claim, the petitioner has the burden to prove that (1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance. The failure to satisfy any one of the prongs will cause the entire claim to fail.

*Commonwealth v. Benner*, 147 A.3d 915, 919–920 (Pa. Super. 2016) (internal citations omitted). Upon review, for the reasons that follow, we find no merit to Appellant's claims that trial counsel was ineffective for failing to support legal arguments on direct appeal to this Court.

Regarding pre-arrest statements made to police, the trial court issued a comprehensive, 65-page opinion detailing its reasons for denying suppression on December 11, 2009. More specifically, the trial court detailed the four separate times police questioned Appellant, but noted that each time Appellant was free to leave and not in police custody during the interviews and, therefore, not entitled to warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). Trial Court Opinion, 12/11/2009, at 43-56.

On direct appeal, Appellant argued that police questioning amounted to interrogations because the officers had underlying information tending to implicate Appellant in the crimes. We found that Appellant failed to support this argument with legal authority. *See Commonwealth v. Davis*, 32 A.3d 272 (Pa. Super. 2010) (unpublished memorandum) at 6. However, we

noted that the necessity of *Miranda* warnings turned on whether the person is physically deprived of his freedom or reasonably believes his movement is restricted. We determined that *Miranda* did not apply because the record did not demonstrate that he was the subject of custodial interrogation. Upon review, we agree that there was no merit to Appellant's underlying claim that statements to police should have been suppressed and, therefore, direct appellate counsel was not ineffective for failing to develop these issues on direct appeal.

With regard to the seizure of his cellular telephone, the trial court, in its suppression analysis, determined that: (1) police obtained Appellant's cellular telephone number from two witnesses, despite Appellant telling police he did not have one; (2) police then called the telephone when Appellant answered his door and heard ringing inside the residence; and, (3) Appellant admitted the cellular phone was his and voluntarily handed it over to police, after the police explained they would obtain a warrant to secure it. *Id.* at 58-60. Even if appellate counsel had more fully developed this issue on appeal, it lacks merit, because the evidence showed there was no police coercion, no interrogation, and Appellant voluntarily surrendered his cellular telephone. Accordingly, counsel cannot be ineffective for failing to develop a meritless issue.

Pertaining to news coverage, the trial court determined that Appellant failed to proffer evidence that media coverage was sensational, inaccurate, slanted, or unduly inflammatory towards Appellant. Trial Court Opinion,

8/2/2010, at 11. Moreover, each juror was subject to *voir dire* and not one testified that he or she had a fixed bias against Appellant due to media coverage. *Id.* Thus, the trial court stated that there was no reason for a change of venue. *Id.* On direct appeal, this Court "agree[d] with the trial court's reasoning and [] affirm[ed] its denial of Appellant's motion for a change of venue" because "Appellant ha[d] not advanced meritorious grounds for relief." *Id.* Based on the foregoing, we concluded there was no merit to Appellant's claim that he was unfairly prejudiced by media coverage. Hence, trial counsel effectively raised and presented the claim on appeal, which we ultimately determined had no merit.

Finally, we address Appellant's claim that counsel was ineffective for failing to develop weight and sufficiency claims on direct appeal. Upon review of the record, the Commonwealth presented overwhelming evidence of Appellant's guilt at trial, including the various statements Appellant made to police, the testimony of two eyewitnesses who placed him at the scene of the crime with a firearm, and evidence that Appellant drove his co-defendants in his mother's car to and from the scene on the Pennsylvania Turnpike. Hence, Appellant's underlying weight and sufficiency challenges lack merit and, thus, afford no grounds for relief on Appellant's derivative ineffectiveness claim. For all of the foregoing reasons, we conclude that appellate counsel was not ineffective for failing to more fully develop issues that we deemed waived on appeal.

In his third issue presented, Appellant contends trial counsel was ineffective for failing to communicate and review with him purported plea negotiations with the Commonwealth prior to trial. Appellant never raised this issue in his original PCRA petition, nor in a formal amendment. However, at the PCRA evidentiary hearing held on January 22, 2013, PCRA counsel presented a "three-page letter" where "issues were narrowed down." N.T., 1/22/2013, at 3. The PCRA court "ma[de] that part of the record" and considered the letter an "amended petition."[3] *Id.* at 5. However, we can glean from the transcript of the January 22, 2013 hearing that one of the issues before the PCRA court was trial counsel's effectiveness regarding plea negotiations with Appellant prior to trial. Moreover, the PCRA court held another hearing on January 15, 2014, wherein Appellant testified regarding the issue of counsel ineffectiveness in relation to plea negotiations. At the January 15, 2014 hearing, the PCRA court incorporated trial counsel's testimony from the January 22, 2013 hearing into the record. Ultimately, the PCRA court rejected the claim because it credited trial counsel's testimony that he consulted with Appellant about plea negotiations.

_____

[3] This letter, however, is not contained in the certified record or otherwise noted on the docket. The incredibly convoluted procedural history of this case has not been made easier by the PCRA court. The PCRA court consistently accepted informal filings and oral amendments to the various *pro se* PCRA petitions. As an appellate court, we review claims upon a cold record. It is imperative that we have all of the proper documentation to evaluate claims properly on appeal.

Regarding plea negotiations, we have stated:

A criminal defendant has the right to effective counsel during a plea process as well as during a trial. Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

**Commonwealth v. Hickman**, 799 A.2d 136, 141 (Pa. Super. 2002).

Here, the PCRA court determined:

The testimony established that the guilty plea offer was to an open plea that was meant to resolve all open charges against [Appellant] under both his criminal docket numbers[4] which involved four charges of homicide. If [Appellant] had pled guilty to four counts of [t]hird-[d]egree [h]omicide, he would have been exposed to a maximum sentence of twenty (20) to forty (40) years consecutively for each charge, for a total of eighty (80) to one hundred and sixty (160) years of incarceration. However, because it was an open plea, the [c]ourt had the discretion to fashion an appropriate sentence. In choosing to go to trial, [Appellant] advanced his claim of innocence and, therefore, a plea would not have been appropriate. Further, by opting for trial, [Appellant] accepted the risk of a guilty verdict to [f]irst-[d]egree [m]urder in order to assert his innocence.

The record establishes that [trial counsel] thoroughly explained [the] guilty plea offer to [Appellant] and directed six other adults to assist him in helping [Appellant] understand the terms, including [Appellant's] parents, two

_____

[4] Appellant was charged with one count of homicide in an unrelated case. After the trial in this matter, Appellant pled guilty to first-degree murder in that other case and received a life sentence as a result. **See** PCRA Court Opinion, 2/17/2014, at 2.

- 12 -

> basketball coaches, and two court-appointed professionals[.] [The trial court found] that the record establish[ed] that [Appellant's] decision to go to trial was free and voluntary, and against the advice of everyone who spoke with him. This record also suggests that [Appellant's] independent decision to risk trial in the face of the advice by his family, professional supporters and attorney erodes the assertion that he is a young man who has a weaken[ed] intellect, borderline mental retardation and/or that he is a follower. Clearly, it was an independent decision based upon his evaluation of the risks and rewards.

PCRA Court Opinion, 2/17/2014, at 10-11.

Upon review of the record, we discern no abuse of discretion or error of law in denying Appellant's ineffective assistance of counsel claim pertaining to plea negotiations. Trial counsel testified that the Commonwealth offered Appellant a plea deal to resolve four counts of third-degree murder, leaving the sentence open for the trial court to impose. N.T., 1/22/2013, 45-47. However, counsel also explained the various ranges of sentences that Appellant could receive for both first-degree and third-degree murder and told Appellant he had the right to a jury trial. *Id.* Appellant also spoke with family, friends, and his basketball coach prior to rejecting the plea negotiation. *Id.* at 48-49. The PCRA court found trial counsel's testimony credible and we will not usurp that determination. As such, Appellant's final claim lacks merit.

Moreover, after an independent examination of the certified record, we do not find any other issues of potential merit.

Order affirmed. Counsel's petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/1/2017